Adrianne M. ROUNDS,
Plaintiff–Appellee,

v.

RUSH TRUCKING CORPORATION,
Defendant–Appellant.

Docket No. 99–7861

United States Court of Appeals,
Second Circuit.

Argued Jan. 10, 2000

Decided April 27, 2000

F. David Rusin, Esq., (Lisa Solomon, Esq., on the brief), Ballow, Braisted, O'Brien & Rusin, P.C., Williamsville, N.Y., for Plaintiff–Appellee.

Kevin Kearney, Hodgson, Russ, Andrews, Woods & Goodyear, LLP, Buffalo, N.Y., for Defendant–Appellant.

Before: NEWMAN, WALKER and SOTOMAYOR, Circuit Judges.

JOHN M. WALKER, Jr., Circuit Judge:

In this diversity action, filed pursuant to 28 U.S.C. § 1332(a)(1), defendant-appellant Rush Trucking Corp. ("Rush Trucking") appeals from a judgment entered upon a jury verdict in the district court for the Western District of New York (Leslie G. Foschio, *Magistrate Judge*). The judgment awarded $931,218 to plaintiff-appellee Adrianne Rounds for damages suffered as the result of a car accident. On appeal, Rush Trucking argues that the district court erred when it instructed the jury to consider separate awards for pain and suffering and for emotional distress, and that the jury award was excessive under New York law. Because we agree that New York law prohibits separate awards for pain and suffering and emotional distress, we vacate the final judgment of the district court and remand for a new trial, unless Rounds, upon remittitur, accepts a reduction of her award in the amount of $350,000, representing the full amount of the jury's separate award for emotional distress damages.

## BACKGROUND

Rounds, a New York resident, worked as a registered nurse at the Warren General Hospital in Warren, Pennsylvania. On January 21, 1994, after Rounds stopped her pickup truck before the intersection of Route 62 and Jackson Run Road in Conewago, Pennsylvania, a tractor-trailer truck, owned by Rush Trucking, struck Rounds's pickup from behind, pushing it through the intersection for approximately 180 feet. The accident caused considerably less physical damage to Rounds's vehicle than one might expect, and Rounds herself appeared relatively uninjured. After the accident, she continued on to the hospital and reported for work. Subsequently, Rounds developed myriad physiological and psychological problems, allegedly as a result of the accident. Rush Trucking conceded liability but at trial contested whether Rounds's injuries were proximately caused by the accident and also questioned the extent of her injuries.

Evidence that the jury was free to accept demonstrated that Rounds slept for nearly four days following the accident. When she attempted to return to work she experienced numbness and tingling in her extremities; moving about induced nausea and vomiting and she experienced pain in her lower back, her arm, her leg, and her head. She began a regimen of physical therapy which included treatment with heat, ultrasound and myofascial release. Her physical therapist referred her to a specialist who provided an oral brace to stabilize her jaw. This brace reduced her nausea and vomiting but increased her facial pain.

Beginning in 1995, Rounds began suffering what she referred to as "drop attacks" in which she would fall down, without losing consciousness, but without any sensation of falling. Rounds's vision also deteriorated. She began receiving treatment from a chiropractor, Dr. Lynn Pownall, who diagnosed Rounds as suffering from cervical hyper flexion causing cervical, lumbar and temporal mandibular segmental dysfunction, myofascitis and disc herniation. She later diagnosed Rounds with lumbar sprain/strain syndrome and lumbar disc herniation, minor disc bulging and disc problems, and a complete reversal of her cervical curvature. Doctors testified at trial that many of Rounds's symptoms were permanent. Rounds herself testified that she remains sensitive to light, suffers from frequent headaches, and that even household chores are often painful. Rounds has been unable to return to work. She returned to school to pursue a degree in arts and illustration but was forced to drop out twice because of her physical condition.

Central to the issue presented by this appeal, one of Rounds's experts, Dr. Franks, testified that Rounds continues to experience pain on a daily basis and that this pain is a depressant and impacts directly on her self-esteem and her ability to

cope with stress. He explained to the jury that debilitating injuries often cause highly motivated people, like Rounds, to suffer from an emotional dysfunction that magnifies their symptoms in a subconscious process that "worsens the whole situation."

The district court instructed the jury that it could separately award damages for pain and suffering and for the emotional distress described by Dr. Franks and Rounds herself. The magistrate judge explained to the jury that it could award damages to compensate her "for any conscious pain and suffering, and mental suffering, emotional and psychological injury, and any physical consequences resulting from the emotional distress caused by the defendant." The magistrate judge submitted a questionnaire to the jury which contained separate spaces for the jury's finding of different categories of damages, including separate spaces for pain and suffering and for emotional distress. The jury returned the following awards:

| | |
|---|---|
| Past medical expenses: | $ 18,500 |
| Past lost earnings: | $160,000 |
| Past pain and suffering: | $250,000 |
| Past emotional distress: | $250,000 |
| Future medical expenses: | $ 20,000 |
| Future lost earnings: | $160,000 |
| Future pain and suffering: | $100,000 |
| Future emotional distress: | $100,000 |

Following a recalculation of damages pursuant to N.Y. C.P.L.R. ("CPLR") § 7511 (McKinney 1999), the district court entered a judgment in the amount of $931,218 plus interest on January 28, 1999. After the trial, Rush Trucking moved pursuant to Fed.R.Civ.P. 59 for a new trial or, alternatively, to strike the jury award for past and future emotional distress and to otherwise reduce the award. The magistrate judge denied the motion and ruled that New York law permits juries to award separate damages for pain and suffering and for emotional distress.

On appeal, Rush Trucking argues that (1) the jury's award was excessive within the meaning of CPLR § 5501(c), and (2) New York law prohibits jury instructions that permit the jury to make separate awards for pain and suffering and emotional distress. We will not reverse the magistrate judge's finding that the verdict was not excessive under New York law. But because we agree with Rush Trucking that the jury instruction misapplied New York law, we vacate and remand for a new trial unless Rounds accepts on remittitur a reduction in her award of $350,000, amounting to a total award of $581,218, plus interest.

## DISCUSSION

■ We turn first to the magistrate judge's determination that the jury's verdict was not excessive. The magistrate judge, sitting in diversity, correctly determined that New York law governs such an inquiry and applied the standard set forth in CPLR § 5501(c): "an award is excessive or inadequate if it deviates materially from what would be reasonable compensation." Our review of the magistrate judge's determination is limited to abuse of discretion. *See Gasperini v. Center for Humanities, Inc.*, 518 U.S. 415, 438, 116 S.Ct. 2211, 135 L.Ed.2d 659 (1996).

The magistrate judge correctly applied the § 5501 standard by reviewing the evidence at trial and comparing the jury award to other cases in which evidence of similar injuries was presented. *See id.* at 425, 116 S.Ct. 2211 (citing New York cases). The magistrate judge's recitation of the evidence and examination of comparable New York cases is thoroughgoing and persuasive. The magistrate judge did not abuse his discretion and our review of this aspect of the jury award is therefore at an end.

■ The second and more pressing issue we face is whether the magistrate judge's jury instructions permitting the jury to return separate awards for pain and suffering and for emotional distress were proper. We review the jury charge *de novo*, and "will reverse only if all of the instructions, taken as a whole, caused a

defendant prejudice." *United States v. Bok,* 156 F.3d 157, 160 (2d Cir.1998). Of course, in a diversity case we are "bound to follow state law on any matter of substantive law." *DeWeerth v. Baldinger,* 38 F.3d 1266, 1272 (2d Cir.1994). And, "[i]n deciding a disputed issue of state law in a diversity case, a federal [trial] court should attempt to discern what the highest court of that state would decide." *L–Tec Elec. Corp. v. Cougar Elec. Org., Inc.,* 198 F.3d 85, 86 (2d Cir.1999).

Our analysis therefore begins with the leading case of *McDougald v. Garber,* 73 N.Y.2d 246, 538 N.Y.S.2d 937, 536 N.E.2d 372 (1989), in which the New York Court of Appeals struck down separate awards for pain and suffering and for loss of enjoyment of life, stating:

> Recently ... there has been an attempt to segregate the suffering associated with physical pain from the mental anguish that stems from the inability to engage in certain activities, and to have juries provide a separate award for each....
>
> .    .    .    .    .    .
>
> We do not dispute that distinctions can be found or created between the concepts of pain and suffering and loss of enjoyment of life. If the term "suffering" is limited to the emotional response to the sensation of pain, then the emotional response caused by the limitation of life's activities may be considered qualitatively different. But suffering need not be so limited.... Traditionally, by treating loss of enjoyment of life as a permissible factor in assessing pain and suffering, courts have given the term this broad meaning.

*Id.* at 256–57, 538 N.Y.S.2d 937, 536 N.E.2d 372 (citations omitted). By defining pain and suffering as a broad category that includes loss of enjoyment of life, the *McDougald* court foreclosed as duplicative separate awards for these non-pecuniary harms. Rounds urges us to interpret *McDougald* narrowly, distinguishing her claims for emotional distress from *McDougald*'s loss of enjoyment of life. The question is whether, under New York tort law, pain and suffering subsumes emotional distress making their separate compensation duplicative.

To be sure, distinctions can be drawn between loss of enjoyment of life and emotional distress. The former is specifically concerned with "the inability to participate in activities that once brought pleasure." *Id.* at 257, 538 N.Y.S.2d 937, 536 N.E.2d 372. Rounds argues that the latter describes the pain she lives with on a daily basis and the emotional distress that she suffers as a result of the physical pain she endures. However, the ability to articulate differences between the damages at issue in *McDougald* and those challenged here does not alter the Court of Appeals's reasoning which applies equally to emotional distress. As the Court of Appeals stated:

> The advocates of separate awards contend that because pain and suffering and loss of enjoyment of life can be distinguished, they must be treated separately if the plaintiff is to be compensated fully for each distinct injury suffered. We disagree. Such an analytical approach may have its place when the subject is pecuniary damages, which can be calculated with some precision. But the estimation of nonpecuniary damages is not amenable to such analytical precision and may, in fact, suffer from its application.

*Id.* Despite our ability to distinguish between loss of enjoyment of life and the emotional distress at issue in this case, we follow the reasoning of the New York Court of Appeals and find that emotional distress is no more amenable to analytical precision than loss of enjoyment of life. There is no plausible basis for limiting *McDougald* to its facts and holding, as Rounds urges, that pain and suffering does not also encompass emotional distress, which is just as difficult to measure.

Subsequent cases in New York's Appellate Division confirm our interpretation of *McDougald* by identifying a variety of additional non-economic harms that also have been subsumed by the broader category of pain and suffering. *See Eaton v. Comprehensive Care Am., Inc.*, 233 A.D.2d 875, 649 N.Y.S.2d 293, 294 (4th Dep't 1996) ("[T]he court erred in permitting the jury to award damages for shock and fright as a category of damages separate from pain and suffering."); *Toscarelli v. Purdy*, 217 A.D.2d 815, 629 N.Y.S.2d 833, 836 (3d Dep't 1995) ("[M]ental suffering is a component of pain and suffering."); *Pallotta v. West Bend Co.*, 166 A.D.2d 637, 561 N.Y.S.2d 66, 68 (2d Dep't 1990) ("mental anguish" is not separate from pain and suffering); *Lamot v. Gondek*, 163 A.D.2d 678, 558 N.Y.S.2d 284, 285 (3d Dep't 1990) ("Mental suffering is an element of the pain and suffering experienced by injured parties...."); *Deborah S. v. Diorio*, 153 Misc.2d 708, 583 N.Y.S.2d 872, 878 (Civ.Ct. N.Y. County 1992) ("mental and emotional anxiety" is included in pain and suffering). While we find no case from New York holding that pain and suffering includes within it the precise kind of emotional distress claimed by Rounds, we have no doubt that *McDougald* and its progeny establish that pain and suffering encompasses Rounds's alleged emotional distress and that juries applying New York law may not be asked to enter separate awards for each.

The cases Rounds relies upon are ultimately unpersuasive. Rounds finds some superficial support for her argument in the result of *Ferrara v. Bernstein*, 81 N.Y.2d 895, 597 N.Y.S.2d 636, 613 N.E.2d 542 (1993), but the case itself provides us with no real guidance. In *Ferrara* a woman sued an abortion clinic for negligently failing to warn her that she might still be pregnant, resulting two weeks later in her surprise miscarriage. She sued the clinic and won a jury verdict that included $20,000 for pain and suffering and $105,000 for emotional distress. The Court of Appeals affirmed the verdict. Rounds takes from this result that emotional distress is not a subset of pain and suffering and that a jury may permissibly return separate awards for each. But the issue considered by the New York Court of Appeals in *Ferrara* was whether emotional distress in a medical malpractice action was compensable at all, not whether such compensation was properly a subset of pain and suffering. The court's one-paragraph discussion of the issue concludes only that "the breach of duty owed directly to plaintiff leading to her emotional distress is plainly compensable." *Id.* at 898, 597 N.Y.S.2d 636, 613 N.E.2d 542. The *McDougald* issue was never raised. We do not know what the *Ferrara* court would have decided if confronted with the *McDougald* argument, and we will not subvert a clear and consistent line of cases following *McDougald* based on the unreasoned implications of a sustained jury verdict.

Rounds finds more reasoned support in the Appellate Division case *Papa v. City of New York*, 194 A.D.2d 527, 598 N.Y.S.2d 558 (2d Dep't 1993), which sustained a trial court's use of a detailed jury form permitting separate awards for, *inter alia*, pain and suffering, emotional distress, shame and humiliation, and injury to reputation. The *Papa* court stated that "the [trial] court ... properly obviated the necessity for a new trial on liability and/or damages in the event of a general verdict in the plaintiffs' favor by adopting a scrupulously detailed verdict sheet." *Id.* at 562. The verdict sheet at issue separately listed emotional distress and pain and suffering, an instruction prohibited by our reading of *McDougald*.

*Papa* is admittedly difficult to square with *McDougald*, but the two cases can be factually distinguished. Most importantly, the *Papa* court explained that "the Trial Justice expressly instructed the jury to take care not to award redundant damages." *Id.* Forced to reconcile *Papa* with *McDougald*, we note that the trial judge's

admonition rendered any *McDougald* error harmless. We recognize that the *Papa* court never applied harmless error analysis, but neither did it expressly consider *McDougald*. In light of the silence in *Papa* on the *McDougald* issue and the possibility, however strained, of reconciling the two cases, we confidently defer, as we must, to the New York Court of Appeals in *McDougald* over the Appellate Division deciding the case in *Papa.*

Surveying all of the foregoing cases, we hold that New York law has defined pain and suffering to encompass the emotional distress damages allegedly suffered by Rounds. It was therefore erroneous for the magistrate judge to instruct the jury to consider separate awards for emotional distress and pain and suffering because such an instruction was not harmless and could result in duplicative awards.[1] However, plaintiffs like Rounds need not fear that we are eliminating the recovery actually available for her emotional distress. Like the New York Court of Appeals, "[w]e are confident . . . that the trial advocate's art is sufficient guarantee that none of the plaintiff's losses will be ignored by the jury." *McDougald*, 73 N.Y.2d at 257, 538 N.Y.S.2d 937, 536 N.E.2d 372.

■ Confronted with erroneous jury instructions that permit duplicative recovery, we vacate the judgment below and remand with instructions to conduct a new trial, unless Rounds agrees to remittitur to reduce the total award by the amount of non-pecuniary harm that potentially overlaps with pain and suffering. *See Bender v. City of New York*, 78 F.3d 787, 795 (2d Cir.1996); *Vasbinder v. Scott*, 976 F.2d 118, 122–23 (2d Cir.1992).

The jury awarded $250,000 for Rounds's past pain and suffering, $100,000 for her future pain and suffering, $250,000 for her past emotional distress, and $100,000 for her future emotional distress. Of course, there is a possibility that the jury award was not duplicative and that, given proper jury instructions, the jury might have awarded up to $700,000 for Rounds's pain and suffering instead of the $350,000 actually awarded. But it is not for us to speculate about the award that would have been returned by a properly charged jury. Rounds therefore may choose between a reduction in her award on remittitur of $350,000, or a new trial on the limited issue of damages. If Rounds is convinced that a properly charged jury would award in excess of $350,000 for pain and suffering, including emotional distress, she is free to reject remittitur and re-present the case to a jury. If Rounds chooses a new trial, the district court should leave in place the original jury's finding that "the negligence of defendant Rush Trucking Corporation [was] a proximate cause of the injuries claimed by plaintiff, Adrianne Rounds," and submit only the question of damages to a new jury.

The judgment of the district court is vacated and the case remanded for remittitur or a new trial consistent with this opinion.

The parties shall bear their own costs on appeal.

---

**1.** In so holding, we express no opinion as to whether the issuance of separate non-pecuniary damage awards for separate torts runs afoul of New York law.